## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ANDREW C. FREEMAN**<br>1226 Harbor Island Walk<br>Baltimore, MD 21230<br><br>  *Plaintiff*,<br><br>  *v.*<br><br>**BRANDON M. SCOTT**<br>*In His Individual Capacity*<br>Address Unknown<br><br>**CALVIN ALLEN YOUNG III**<br>*In His Individual Capacity*<br>Address Unknown<br><br>**MAYOR AND CITY COUNCIL OF BALTIMORE**<br>Serve on:<br>  Ebony M. Thompson, Esq.<br>  Office of the City Solicitor<br>  100 N. Holliday Street<br>  Baltimore, MD 21202<br><br>  *and*<br><br>**EAST BALTIMORE DEVELOPMENT, INC.**<br>929 N. Wolfe Street, Suite 1106<br>Baltimore, MD 21205<br><br>  *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>COMPLAINT</u>

Plaintiff Andrew C. Freeman ("Plaintiff" or "Mr. Freeman"), by and through undersigned counsel, brings this action against Defendants Brandon M. Scott ("Mr. Scott," "Mayor Scott" or the "Mayor"), Calvin Allen Young III ("Mr. Young), the Mayor and City Council of Baltimore ("Baltimore City" or the "City"), and East Baltimore Development, Inc. ("EBDI," and together with Messrs. Scott and Young and the City, "Defendants") to redress intentional race

1

discrimination and the abuse of power by the Mayor and the City of Baltimore in violation of the

Equal Protection Clause of the Fourteenth Amendment, the Civil Rights Act of 1866, and the Ku

Klux Klan Act of 1871.

## INTRODUCTION

*"Liberty cannot bloom amid hate. Justice cannot take root amid rage. America must get to work. In the chill climate in which we live, we must go against the prevailing wind. We must dissent from the indifference. We must dissent from the apathy. We must dissent from the fear, the hatred and the mistrust…. We must dissent because America can do better, because America has no choice but to do better.*"

Justice Thurgood Marshall, Acceptance speech upon receiving the Liberty Medal at Independence Hall in Philadelphia (Jul. 4, 1992).

1.      Mr. Freeman is a highly regarded real estate developer who had nearly four decades of experience in large-scale mixed use urban projects when he agreed to serve as EBDI's Senior Director of Real Estate Development on a part-time basis.  Mr. Freeman, who is white and Jewish, immediately fit in with his colleagues, all of whom were Black or African American, and quickly became an essential member of EBDI's Real Estate Development team.  He routinely received accolades and expressions of gratitude from Chief Real Estate Officer Karen Major Johnson ("Ms. Johnson") and President & CEO Cheryl Y. Washington ("Ms. Washington").  Within a few months, EBDI offered him the job on a full-time basis. Over the next year, Mr. Freeman saved EBDI hundreds of thousands of dollars through value engineering and helped it move from being on the brink of bankruptcy to having significant working capital. A year later, Mr. Freeman was promoted to Vice President of Real Estate Development as part of a restructuring that resulted in the elimination of Ms. Johnson's position.

2.      Less than two weeks later, Ms. Washington abruptly fired Mr. Freeman and attempted to rehire Ms. Johnson. Ms. Washington admitted in writing that she discharged Mr. Freeman on Mayor Scott's orders and at the direction of Mr. Young, who had recently been

2

appointed to be the Chair of EBDI's Board of Directors.  Mr. Freeman's termination is consistent with the Scott Administration's broader policies and practices that arbitrarily advantage certain racial minorities and women under the guise of promoting diversity, equity and inclusion ("DEI") and disadvantage other people for no other reason than the color of their skin.  Mayor Scott has explicitly made providing opportunities for underrepresented minorities, particularly Black women, a top priority of his Administration. While lawful DEI initiatives appropriately seek to create equal opportunities for groups that have historically been subjected to discrimination and exclusionary practices, Mr. Scott's brand of DEI gives people opportunities simply because they check a box.

3.      Mr. Freeman's discharge exemplifies the very illegal DEI practices that Mr. Scott maintains do not exist. There is no evidence that EBDI has a history of discriminating against Black women. To the contrary, at the time of Mr. Freeman's termination all of EBDI's remaining employees were Black women. Given that the City of Baltimore has been a "majority-minority" city since the 1970s and has primarily had Black mayors going back nearly fifty years, these demographics are not surprising.  What is surprising and disappointing is that the Mayor of a major American city does not recognize or simply chooses to ignore the fact that Jewish people are a minority group.

4.      Through this action, Mr. Freeman seeks to recover economic damages for the compensation and benefits that he has lost due to Defendants' discriminatory conduct, compensatory damages for the emotional and reputational harm that he has suffered, reasonable attorney's fees and other costs of this action, punitive damages, injunctive relief to prevent Defendants from engaging in further acts of discrimination in the future, and such other and further relief as the Court may deem proper.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the parties reside in this District and the underlying events occurred in the District.

## PARTIES

7.      Plaintiff Andrew C. Freeman is an adult resident of Baltimore City, Maryland.

8.      Defendant Brandon M. Scott is an adult resident of Baltimore City, Maryland.  Mr. Scott is, and at all relevant times was, the Mayor of Baltimore. He personally participated in and/or directed the discriminatory conduct and exercised final policymaking authority over the discriminatory policies, practices, and actions alleged herein. He is sued in his individual capacity.

9.      Defendant Calvin Allen Young III is an adult resident of Baltimore City, Maryland. Mr. Young is, and at all relevant times was, Chair of the EBDI Board of Directors and a representative of Mayor Scott and the City.  He personally participated in and/or directed the discriminatory conduct alleged and acted pursuant to Mayor Scott's directives.  He is sued in his individual capacity.

10.     Defendant Mayor and City Council of Baltimore is a municipal corporation organized under Article XI of the Maryland Constitution and the Charter of Baltimore City.

11.     Defendant East Baltimore Development, Inc. is a 501(c)(3) nonprofit organization organized and existing under the laws of the State of Maryland with its principal place of business located in Baltimore City, Maryland. At all relevant times, EBDI operated under the direction and

4

control of City-appointed Board members and acted jointly with and pursuant to the directives of City officials and under color of state law.

**FACTUAL ALLEGATIONS**

**I.    EBDI is a quasi-governmental entity under the direct control of the Mayor**

12.    EBDI is a quasi-governmental community development organization established by the Mayor and City Council of Baltimore, sustained through City action and public financing, and governed by land disposition and development agreements with the City for the purposes of "leading and managing the revitalization of a significant portion of East Baltimore."

13.    EBDI's activities are managed under the direction of a Board of Directors whose members are appointed by various stakeholders, including the Mayor, community representatives approved by members of the City Council, and the Board itself.

14.    The Mayor appoints six out of eighteen Board members, including the Chair, and five "at-large" members appointed by the Board must be selected in consultation with the Mayor.

15.    The Board also has broad authority to "appoint, hire and dismiss all personnel" and to "set and adjust wages and rates of pay for all personnel," including the President & CEO.

16.    EBDI's core values include "Economic Inclusion," specifically, "increasing hiring opportunities for East Baltimore and Baltimore City residents."

17.    In addition, from its inception EBDI set goals that expanded on the traditional goals that organizations set for the participation of minority and women developers and equity owners.

**II.    Mr. Freeman is a seasoned real estate developer who was recently selected to lead EBDI's redevelopment efforts**

18.    Mr. Freeman was employed by EBDI from January 17, 2023 until June 7, 2024.

19.    Mr. Freeman was initially hired as Senior Director of Real Estate Development on a part-time basis at a rate of $100.00 per hour.

20.     In April 2023, Mr. Freeman was offered the position on a full-time basis at a base salary of $200,000.00.

21.     At all times, Mr. Freeman reported to EBDI's Chief Real Estate Officer, Karen Major Johnson.

22.     Throughout Mr. Freeman's employment with EBDI, he was an essential member of the Real Estate Development team. He routinely interacted with Ms. Washington, the Real Estate Committee, the Board, and other stakeholders.  He consistently met or exceeded EBDI's legitimate expectations.

23.     Mr. Freeman's vast knowledge and invaluable skillset in real estate development and management helped EBDI transition from being on the verge of bankruptcy to having significant working capital by leveraging owned land for self-development or joint ventures with others.  In addition, he was the staff member principally responsible for several projects that put EBDI on the path to self-sufficiency.

24.     For instance, Mr. Freeman finalized the purchase and sale agreement for the conveyance of "Parcel B" to developer Ronald Lipscomb for $1,350,000.00, and he even negotiated an expedited closing to ensure that EBDI would have sufficient funds available to make payroll.

25.     Mr. Freeman was instrumental in EBDI exercising its Right of Reversion with respect to "Parcel K," land that had been left undeveloped for nearly 10 years since EBDI sold it to Pennrose Properties to be developed into multifamily housing.  This gave EBDI the ability to move forward with the development of much needed housing units and the title to a property with an appraised value in excess of $6 million.

26.      Mr. Freeman negotiated a complex multi-year deal and finalized the letter of intent and purchase and sale agreement for Johns Hopkins Hospital to purchase "Parcel C" for approximately $2 million.

27.      Mr. Freeman worked with EBDI's civil engineer to finalize the construction plans for the "Phase 2B Infrastructure Project," a major project that involves new roads, sidewalks, lighting, landscaping, and stormwater management throughout the EBDI footprint. He also worked with the City to obtain approval for the plans and with the bonding company to secure the surety bond required to obtain permits from the City. While working with the bonding company, he discovered that it was holding $260k in cash that belonged to EBDI, and he arranged for the funds to be released. His ability to manage the project in-house had already saved EBDI half a million dollars in value engineering and would have saved the organization an additional $300-$500k in construction management fees going forward.

28.      In/around May 2024, Ms. Washington informed Ms. Johnson and Mr. Freeman that EBDI might be making some strategic and/or personnel changes.

29.      Shortly thereafter, EBDI eliminated Ms. Johnson's position and promoted Mr. Freeman to the newly created role of Vice President of Real Estate Development.

30.      Ms. Washington told Mr. Freeman that EBDI elected to eliminate Ms. Johnson's position because the organization did not need a Chief Real Estate Officer and a Senior Director of Real Estate Development and that he was retained due to his extensive development experience.

31.      Ms. Washington initially told Mr. Freeman that he would receive a $10,000.00 raise for taking on additional responsibilities.

32.      However, a couple days later Ms. Washington informed Mr. Freeman that Mr. Young had denied his salary increase.

**III.   EBDI fired Mr. Freeman on the Mayor's orders**

33.   On June 7, 2024, Ms. Washington notified Mr. Freeman that EBDI was terminating his employment effective immediately.  Ms. Washington repeatedly emphasized that the decision was not made by her and that she did not agree with it.  She also made clear that Mr. Freeman was terminated at the direction of Mr. Young.

34.   On June 9, 2024, Ms. Washington sent Mr. Freeman text messages in which she wrote, in pertinent part, "Hi Andy – Just checking on you.  I don't even have the words to express how [] incredibly sorry and livid I am about how things went down….  I have never experienced this either and to have to be the messenger was just sickening to me!!"

35.   On June 10, 2024, Ms. Washington sent Mr. Freeman a text message in which she wrote, "Andy this decision was NOT mine!  Not at all!!  I would have NEVER done this.  NEVER! I totally understand your response and don't take it personally.  I feel HORRIBLE!!"

36.   On June 11, 2024, Ms. Washington sent Mr. Freeman a text message in which she wrote, in pertinent part:  "Being CEO at EBDI can mean very little at times.  I saw that with the previous CEOs.  Each one operated under the authority of many stakeholders and had to follow orders or be fired….  Working for Jeanne had its challenges but at least she typically took my recommendations on operational things and when she didn't agree I could usually count on Abe and other board members to convince her.  This time around it's different.  He came in with full authority to make significant changes to keep the org operating.  The decisions are not mine but I'm tasked to implement them.  So I can either follow directives or be insubordinate and get fired, which I can't afford."

37.     At or around the time of Mr. Freeman's termination, Mr. Young claimed that he directed Ms. Washington to fire Mr. Freeman because he "had a change of heart" about terminating Ms. Johnson and because Mr. Freeman "didn't fit in" or "wasn't a good fit."

38.     In reality, when Mayor Scott found out that Ms. Johnson was discharged while Mr. Freeman was retained, the Mayor was "upset," he "had an issue with it," and he said that EBDI was "not focusing on core values."

39.     After Mr. Freeman filed a charge of discrimination with the U.S Equal Employment Opportunity Commission, EBDI asserted for the first time that he was terminated for "performance issues" and that he did not support the organization's "core values."

40.     As a result of Defendants' discriminatory actions, Mr. Freeman has suffered reputational harm, loss of income, and lost professional opportunities.

41.     Mr. Freeman also suffered and continues to suffer emotional distress and other damages.

### COUNT I—42 U.S.C. § 1983
### (VIOLATIONS OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT)

42.     Plaintiff incorporates all prior paragraphs by reference.

43.     Defendants intentionally discriminated against Plaintiff based on his race.

44.     Defendants acted under color of state law.

### COUNT II—42 U.S.C. § 1983
### (DEPRIVATION OF RIGHTS SECURED BY 42 U.S.C. § 1981)

45.     Plaintiff incorporates all prior paragraphs by reference.

46.     Plaintiff's employment with EBDI constituted a contractual relationship.

47.     Defendants interfered with that relationship because of Plaintiff's race.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A declaratory judgment that Defendants have discriminated against Plaintiff in violation of federal law as alleged in Counts I-II;

B. A permanent injunction enjoining Defendants and their agents, employees and/or representatives from engaging in any further acts of discrimination as set forth above;

C. An Order requiring Defendants to initiate and implement programs that will (1) remedy the effects of their past and present acts of discrimination and (2) eliminate the continuing effects of the discriminatory acts described herein;

D. An award of compensatory damages, punitive damages (except as to the City of Baltimore), and other damages suffered by Plaintiff in an amount to be determined at trial;

E.  An award for any actual monetary losses sustained by Plaintiff as a direct result of Defendants' violations of law;

G. An award of litigation costs and expenses, including reasonable attorney's fees, to Plaintiff;

H. Pre-judgment and post-judgment interest; and

I. Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/

_____

David Manuel Baña, Esq.  (Bar No. 21292)
Law Office of David Baña, Esq.
4305 Saint Paul Street
Baltimore, MD  21218
Tel.: (443) 742-2390
E-mail: david@davidbana.com

Tonya Baña
TONYA BANA LLC
4305 Saint Paul Street
Baltimore, MD  21218
Tel.: (443) 890-8000
E-mail: tonya@tonyabana.com


*Attorneys for Andrew C. Freeman*